ANSIMUS DUFFELL AND WIFE V. JAMESON S. NOBLE, ADM'R.

See this case as to proof of delivery in case of a parol gift of an infant slave.

In view of the whole evidence, we see no reason to apprehend that the jury were misled by anything contained in the charge given, or to suppose the result would have been different, had the instructions asked by the defendant been given.

After having given the law in charge to the jury, as applicable generally to the evidence, we think the Court might refuse to charge in reference to particular parts of the evidence in detail. We see no reason to apprehend that the jury . were unapprised of the legal principles embraced in the instructions asked, or that they did not give to them sufficient consideration in making up their verdict.

The deposition of the witness Bruce, in answer to the fifth interrogatory, (excluded,) was, perhaps, liable to criticism and objection, as being too broad and general in its statements ; but the objection to the interrogatory seems rather critical than sound. The deposition, however, was objectionable in the form and manner of deposing to the facts ; and we are not prepared to say there was error in excluding it. Had a new trial been awarded, we see no cause to suppose that it would have been attended with a different result ; and upon the whole, we are of opinion that the Court did not err in refusing a new trial, and that the judgment be affirmed.

Appeal from Sabine. Suit by Ansimus Duffell and Martha his wife against Jameson S. Noble, administrator of Lydia Loving, for the recovery of a slave girl named Missouri, aged about fourteen years. Commenced January 28th, 1852.

The following is a statement of all the evidence :

It was proved on the trial, by plaintiffs, that the defendant, at the date of the institution of this suit, was in the possession of the negro girl Missouri, holding her as the administrator of the estate of Lydia Loving, deceased. Mr. Duffell, being sworn, said, that he was a son of the plaintiff; that he was twenty years of age next summer ; that he was acquainted with the negro girl Missouri, and had known her from her childhood ; she was born at the house of his father and mother, in the State of Alabama ; she was born in December, 1838 ; he has fre-

quently heard his grandmother, Mrs. Lydia Loving, say that she had given the girl Missouri to his mother, when said girl was an infant, but a few hours old—indeed before the child was dressed, after its birth; he had never heard his grandmother claim the girl as hers, or say that she belonged to any one else than witness's mother; at the time of the birth of the child, and previous to that time, and for about four years afterwards, his grandmother lived in the house of the plaintiff; he had heard his grandmother say that the reason of giving the child to his mother, was on account of his mother's attention and care in raising and taking care of the other negro children; the child, (Missouri,) during the four years in which they all resided together, as far as it was able to be of any service, did as much, perhaps, for his grandmother, as for his mother; his mother had the control, and trained the child; when, however, his grandmother left his mother's and father's, it was understood that the child was to remain with his mother, but the mother of the child, who was an obstinate and high tempered old negro, made a great fuss about it, and declared she would not leave her child; and his grandmother and mother, after consulting about the matter, it was concluded that the child and mother should go together with Mrs. Loving (his grandmother;) his grandmother moved off about nine miles, where she lived about a year, and then moved to Texas. Witness was born in 1834; knew nothing of the gift, of his own knowledge, but from the statements of his grandmother; all the negroes his grandmother had at the birth of the child Missouri, were Reuben, Mary and Nelly (the last, the mother of the others and Missouri;) these negroes were all together on the place where his father and mother lived; his mother and father then had no negroes; his grandmother lived with his father and mother; the negroes waited and attended upon all the family without distinction; they were then (during the four years spoken of) living in Sumpter county, Alabama. When, after that time she moved to Gainsville (nine miles off,) kept

house by herself, and took all the negroes with her. In the year 1845, she moved to Texas and his grandmother visited his mother before leaving, and declared her intention of moving, and endeavored to prevail on his mother to follow her to Texas, and told her that when she came out to Texas the child is yours, (his mother's,) and you can take her away; she then moved to Texas, and in 1846 his mother and father moved to Louisiana, Rapides Parish; in 1846, his grandmother visited his mother, and invited her, his mother, to come to Texas, and when she should do so, she would make a title to her to the girl Missouri; he said his father hired the girl Mary from Mrs. Loving for the year 1851; she has been and still is in the possession of my father and mother, in the parish of Rapides, La. Mary has a child, born since she has come into the possession of my father; his grandmother visited his mother twice since she, Mrs. Loving, came to Texas, and on both occasions brought with her a negro girl to wait on her; that his grandmother kept possession of Missouri up to her, Mrs. Living's death, excepting the period of four years succeeding Missouri's birth, which death occurred about November, 1851. Missouri was generally called "Puss."

Wm. Mason, being sworn, said, that Lydia Loving came to this country in the year 1845; she brought with her four negroes named Reuben, Mary, Missouri and Nelly, which were all the property she had here; he has been, from 1846 to the present time, Assessor and Collector of taxes for this county; he called upon her, Mrs. Loving, in that capacity, in 1846, for her taxes; she said she thought she ought not to pay taxes on the girl Missouri, because she was her daughter's, Mrs. Duffell, as she intended her for her, at her death; he said the heirs of Mrs. Loving are Mrs. Duffell, (her daughter,) the children of Manuel Loving, (her son,) and the children of Mrs. Ard, (her daughter,) and heard Manuel Loving speak of his brother in Georgia; she had possession of the girl in question, and controlled her as her own, and paid taxes on her from the time

she came here till she died; I never heard of any one setting up a claim to her, during Mrs. Loving's life; value of the girl $600 or $700; hire worth $7 or $8 per month.

F. M. Weatherell, sworn, said he knew the girl Missouri; she was in possession of the defendant at the date of the institution of this suit; she was in possession of Mrs. Loving from 1845 until she died. The negro is still living.

James Mason, being sworn, said he was a near neighbor of Mrs. Loving; she had possession of the girl, and claimed her and controlled her as her own; never heard the subject of title or right to any of the negroes brought up or discussed; she used them all alike; they were all in her possession, and treated and controlled alike by her; he never heard any one set up any claim to the girl, until the institution of this suit.

Mrs. Culbert, sworn, said she lived near Mrs. Loving, and was very intimate with her; had often heard her speak with reference to the ownership of the girl Missouri; she has several times heard her say, that she had given the girl to Mrs. Duffell, when it was an infant; had never heard her make any other declaration in regard to the ownership of the girl; during the summer of 1851, she said that if she lived she was going to Louisiana to visit her daughter, Mrs. Duffell, and intended to take with her the girl Missouri and deliver her to Mrs. Duffell; she said she had never heard Mrs. Loving say that she had delivered to Mrs. Duffell the negro girl, and had never heard her claim the negro as her own, but always spoke of her as Mrs. Duffell's, and that the inducement of the gift was the services of Mrs. Duffell in raising the other small negro children, &c.

Mrs. Meadow, sworn, says she was well acquainted with Mrs. Loving; was intimate with her; had frequently heard her say she had given Missouri to her daughter when it was an infant, and that the inducement of the gift was for the services of Mrs. Duffell to her in raising and taking care of the negro children and attention to their mother; Mrs. Duffell sent clothes (dresses

and under-clothes) to the girl Missouri, from Louisiana to Texas; she (Mrs. Duffell) resided about 150 miles from Mrs. Loving; she had frequently heard Mrs. Loving speak to the girl about sending her to her Miss Martha Duffell; such expressions were frequently made when she was fretted.

James M. Weatherrel, sworn, said Mrs. Loving, about a year before she died, offered to sell him the negro girl, and he offered her five hundred dollars for her; she possessed and controlled the negro.

Mrs. Lydia Bruce testified (answers to interrogatories) that (in April, 1853,) she was twenty-three years of age, and resided on Bayou Clair, in the parish of Rapides, State of Louisiana.; knows all the parties to this suit; has known the plaintiff ever since she can recollect, in the State of Alabama and Louisiana, and became acquainted with defendant last September, in the State of Texas; knows the subject matter in controversy is in regard to a certain negro girl, slave for life, named Missouri, aged about fourteen years; was well acquainted with Mrs. Lydia Loving, in her lifetime; knew her in Alabama and in Louisiana; knew her ever since she can recollect; she was the mother of Mrs. Duffell; she has heard Lydia Loving state in witnesses's presence, that Martha Duffell was the owner of said negro girl; that said Lydia Loving stated in presence of witness to Martha Duffell, that she would let her have said negro girl whenever she came for her; this was about the year 1846 and 1847; says that she is the daughter of plaintiff; that her occupation is constantly to attend to her domestic affairs; that she is a married woman, lives with her husband, W. W. Bruce, in Rapides parish, Louisiana, happy and contentedly; says she knows the facts which she has stated in answering the interrogatories, of her own knowledge.

W. W. Eldridge testified (answers to interrogatories) and said that he was acquainted with the parties plaintiff and defendant; knew Mrs. L. Loving; became acquainted with her in the Spring of 1845 or 1846, then living with her son Manuel

Loving, Sabine county, Texas; she is dead; died in town of Milam, said county, in the Fall of the year 1850 ; had property in possession, some negroes; had a negro woman named Nelly, a negro named Reuben, a negro girl named Mary and a negro girl named Missouri, all of dark complexion ; do not know precisely their ages ; the negro girl Mary, during the year 1850, was taken out of the possession of witness by Ansimus Duffell, stating that he had hired her from Mrs. Loving ; the girl Mary has remained in his possession since that time ; that his means of information were derived from said Duffell and others.

It is further stated as a part of the facts, that of the forego-ing witnesses the following were examined for and in behalf of plaintiffs, to wit: Mr. Duffell, Wm. Mason, F. M. Weatherred, Mrs. Egbert, Mrs. Meadow and Lydia Bruce.   Witnesses for defendant, William W. Eldridge, James Mason, James M. Weatherred, all of which is agreed to, &c.

There was a bill of exceptions, as follows :

Be it remembered that on the trial of the above entitled cause, the plaintiffs offered in evidence the interrogatories and an-swers, in the depositions contained, of Lydia Bruce, and that to the fifth interrogatory as follows, to wit: Interrogatory 5th. If, in answer to interrogatory 3rd, you say you know the negro girl, the subject matter in controversy, please state if you know of any gift, sale, transfer or delivery of said negro girl, from either of the parties to the other ; please state who made the gift, sale, transfer or delivery, and to whom was it made, and on what condition.   Answer: Lydia Loving made a donation to Martha Duffell of said negro girl ; said donation was made for the attention of Mrs. Duffell partly to the girl's mother and the other negroes, and for the love and affection which she had for her daughter, the said Mrs. Duffell ; Mrs. Duffell attended to said girl's mother on several different occasions, when con-fined to her bed by sickness.

The defendant objected on the ground that the said inter-rogatory was leading, and that the terms gift, sale, transfer or

delivery were legal conclusions, when in fact the witness should have been asked as to the facts constituting either of the same, which objections were sustained, and the answers thereto ruled out, and not permitted to be read, to which ruling the plaintiffs by their attorneys excepted.

And the defendant objected to the 6th interrogatory and to the reading the answers thereto, which is as follows, to wit:

If, in answer to interrogatory 5th, you say said negro girl was given and delivered by said Lydia Loving to said Martha Duffell, how long did said Martha continue in possession of said girl?

Answers: Mrs. Duffell was in possession of said negro girl about four years. To which plaintiffs objected, because the said interrogatory was based on the next preceding one, which had been ruled out. The same objection, under the same circumstances, were made to the 7th interrogatory and answers, which is as follows, to wit: If you know the reason why the said negro girl came to be brought to Texas, please state it, and your means of knowing it, and what you have heard Lydia Loving say about it.

Answer: Deponent has frequently heard Mrs. Loving, her grandmother, say that she was compelled to take the negro girl in controversy to Texes, for the reason that said girl's mother was so contrary, that she would not go to Texas without her child.

Which objections were by the Court sustained, and the plaintiffs by their attorneys excepted.

The Court charged the jury as follows:

You will first enquire if Lydia Loving, in her lifetime, made a gift by word of mouth, without a witness, of the negro girl Missouri, to Mrs. Duffell. Two things are essential to a gift of this kind. 1st. Lydia Loving must have intended by the acts she did, to part with the title to said negro, at the time she did the act. 2d. She must have then delivered possession of the negro to Mrs. Duffell, that is, given her the control and

possession of the negro, with the intention of divesting, at that time, all her right to said negro, and of vesting the same in Mrs. Duffell. If her intention was, to retain the possession and control of the negro, or to retain the title to the negro for sometime afterwards—till her death, for instance—and at that time only, Mrs. Duffell was to have the negro, it was not a good gift, and you will find for defendant. Or, if you do not find from the testimony that Mrs. Loving intended to give the negro to Mrs. Duffell ; or, that possession was not delivered for that purpose, you will find for defendant. Possession of the negro, alone, is not sufficient ; but possession must have been given for the purpose of vesting the title in Mrs. Duffell, unless Mrs. Duffell was, before the time of the intended gift, in possession of the negro ; if so, further delivery would be unnecessary, if you find from the testimony, that Mrs. Loving intended by what she did, to part with all her right to said negro at that time. But if you find that possession was delivered by Mrs. Loving of the negro, with the intention by said delivery, of vesting the title, by such delivery, in Mrs. Duffell. (So in the Transcript.) (Here were some instructions respecting the value of the negro, her services, and form of the verdict.)

If the admissions of either of the parties, plaintiffs or defendant, or of Mrs. Loving, have been given in testimony before you, you will consider the whole of the admissions, the times, occasions and circumstances, and contradictory statements, (if any) and give just such weight as you think them entitled to ; and if you are satisfied, from the whole testimony, that any admission or statement, which has been made, is untrue, in fact, you will not give such admission any weight in forming the verdict.

The mere fact that Mrs. Lydia Loving may have afterwards been in possession of the negro, if such be the fact, is not sufficient to divest the right of the plaintiff, in said negro, if you are satisfied of the gift, as now defined ; but, if you are satisfied from the testimony, that Mrs. Loving was, in fact, after-

wards the owner of the negro, by subsequent control, you will find for defendant. In the absence, however, of other testimony, the possession of the negro, (if you find her in possession of the negro afterwards,) is sufficient evidence of her title to the negro, if no other testimony has been offered, which satisfies you to the contrary. But if there is other testimony before you, you will look to the whole of the testimony and find your verdict as you are convinced is correct.

The Court, at the defendant's request, gave the following additional instruction : If the jury believe from the evidence, that Lydia Loving was in the peaceable and uninterrupted adverse possession of the slave sued for, for ten (so in Transcript) years next preceding the death of said Lydia Loving, and the commencement of this suit, and ten (so in Transcript) years next after the alleged gift took place, the jury may let that belief have its proper weight in inducing them to believe no alleged gift had ever been made, and if made, that it is entitled to the same weight in inducing them to believe the same to have been cancelled. (The last paragraph of the general charge of the Court was probably given, after this charge, asked by the defendant. REPS.)

The plaintiffs requested the Court to give the following instructions :

1st. That if they believe from the evidence, that Lydia Loving was the owner of Missouri at the time of the birth of the latter, and that she delivered said negress to Mrs. Duffell a few hours afterwards, and that she delivered said girl with the intention of passing the title to Mrs. Duffell, by such delivery, the title was divested out of Lydia Loving and vested in Mrs. Duffell.

2nd. If Mrs. Duffell is shown by the evidence, to the satisfaction of the jury, to have been in possession of the negress Missouri at any time between the death of Lydia Loving and the birth of Missouri, and that while she was so in possession, Lydia Loving said that the negress belonged to Mrs. Duffell,

and that she had given her to Mrs. Duffell, then no formal delivery is necessary to consummate the title in Mrs. Duffell, and the gift is perfect without such delivery.

3rd.   If, from the evidence, Lydia Loving is believed by the jury to have been afterwards in the possession of the negress, that possession is held in trust for Mrs. Duffell.   And if the jury believe, from the evidence, that Mrs. Duffell had possession of said negress, at any time during the lifetime of Lydia Loving, and that while so in possession, Lydia Loving acknowledged the title in said negress to be in Mrs. Duffell, and that she had given said negress to Mrs. Duffell, then the presumption of law is that the said property was delivered to Mrs. Duffell by Lydia Loving, with the intention at the time of the delivery, of transferring the title to her.

4th.   If it is shown by the evidence, to the satisfaction of the jury, that Mrs. Duffell hired the negro Mary of Lydia Loving, this is no evidence in law of the non-delivery of Missouri by Lydia Loving to Mrs. Duffell.

5th.   That if they believe, from the evidence, that the negress, Missouri, at the time the gift is alleged to have taken place, was of such tender years, that it would have been dangerous to the life of the infant negress to separate her from her mother, then it is not necessary to prove an actual and manual delivery of the said infant negress, but that an acknowledgment by Lydia Loving, that she gave said negress, under such circumstances, and that the property was Mrs. Duffell's, will be a sufficient constructive delivery to pass the title to Mrs. Duffell, especially if the jury believe from the evidence, that Lydia Loving was then living with Mrs. Duffell.

6th.   That if they believe from the evidence, that Lydia Loving delivered possession of the said negress with the intention of passing the title, that it did pass the title, and that any subsequent acts or claim of ownership by Lydia Loving will not affect the title of Mrs. Duffell.

All of said instructions were refused, " because it is thought the law of the case has been already given."

Verdict and judgment for defendant. Motion for new trial overruled. The assignment of errors covered all points raised in the progress of the cause.

*R. S. Walker*, for appellants. The charge of the Court was erroneous and misled the jury. It required more proof than the case demanded, taking into view the circumstances under which the gift was made, and the nature and condition of the property given. An intention on the part of the donor to control and possess the child after delivery (actual or constructive) was not incompatible with a good gift. If there was a sufficient delivery, with the intent to pass title, it is not material to know what, under the pleadings, was the intention of either party as to the control or immediate possession thereafter.

The impression which the charge would naturally make is, that words importing a gift, and actual delivery, with intent to convey title, was not sufficient, but that the jury must pursue the enquiry farther, and to entitle the plaintiff to recover find that the donor did not intend to retain the control or possession, &c. However applicable such a charge might be in respect to a distinction to be taken between a gift *in præsenti* and *in futuro ;* or as applicable to a gift of a horse or other similar chattel, as applied to an infant child a few hours old, it would be inconsistent with nature, with possibility or humanity, to make the gift depend on the donor's (who owned the mother) intent to control and possess the child, until it might safely be taken away. Hence the charge required too much ; and it was consistent with the gift that the donor might have intended to control the possession for " some time afterwards." It was not necessary, as charged by the Court, that such control and possession as, unexplained, would be understood by the jury, should have been given by the donor, to have made the gift good ; because of the relationship between the parties, their living together, and the absurdity of (in the ordinary sense of

the word) controling possession or delivering ·a baby before it is dressed " in this breathing world."

On these questions we cite Hillebrant v. Brewer, 6 Tex. R. 45 ; Canadine v. Collins, 7 Smedes & Marsh., 432 ; Grangiac v. Arden, 10 Johns, 293 ; Caldwell v. Wilson, 2 Speer, R. 75, where delivery is defined, a transfer of possession either by actual tradition from hand to hand, or by an expression of the donor's willingness that the donee should take, when the chattel was present and in a situation to be taken by either party, and upon their authority respectfully insist that the delivery and intent by law contemplated, differ widely from that contemplated in the charge, and that the intent to control, &c., if the act was consummated, is not involved under the facts of this case. (Danly v. Rector, 5 Eng. 211.)

The Court below, in the charge asked by the plaintiff to be given, refused to define and explain the intent and degrees of the legal phrases, " delivery," " possession," " control," &c. The first charge asked and refused contained all that was necessary to have been proved on the subject of delivery, dispensing with the objectionable matter of the charge given. Second charge asked was applicable to facts in the case, and was not charged upon by the Court. Under such a state of facts the law implies a gift, with all the circumstances attendant, necessary to vest the property. The fifth charge asked to be given by plaintiffs, presented to the Court but a qualification of the broad and liberal terms used in the charge, unexplained, as to what sort of delivery might be sufficient. The charge of the Court did not negative the necessity of proof of actual delivery ; the charge asked, if given, would have enabled the jury to have known, and consequently to have determined that the expressed wish of the donor to give the child was, under all the circumstances, all that could have been done to pass title by parol gift, and that it did actually pass, whereas the charges as made, created a very different and contrary impression to the jury, who, we must suppose, understood the

words according to their ordinarily received meaning, and cannot be supposed to have known without explanation, the distinctions sought to be made manifest by the fifth charge asked.

The testimony which was excluded, of Mrs. Bruce, was very important for the plaintiff. The grounds upon which the ruling was predicated are too narrow. (Able v. Sparks, 6 Tex. R. 349.)

In the sense in which the Court sustained the objections, successful resistance might have been made to the most simple enquiry, in many imaginable instances. Although legal delivery is constituted of divers things, it surely would not be held incompetent to enquire as to the fact of delivery, or the fact of possession, the fact of gift, sale, &c., though further examination into the facts, might show the witness's judgment to be incorrect.

The sixth interrogatory was struck out because based upon the fifth, and if the ruling upon it were correct, we suppose that the sixth should have been excluded. That objection as applied to the seventh interrogatory is, however, not well taken, and is, as far as those stricken out are concerned, wholly isolated and independent.

Although where a verdict is manifestly in accordance with the weight of the evidence and the justice of the case, it will not be disturbed on account of the misdirection of the Judge ; yet, where the testimony has been excluded, erroneous instructions given by the Court to the jury, and the proof mistated in summing up the evidence, the verdict will be set aside and a new trial granted. (Botts v. House, 6 Geo. 324 ; U. S. Dig. NEW TRIAL, Sec. 69.)

*J. M. Burroughs*, for appellee. I. The fifth interrogatory propounded to Lydia A. Bruce is objectionable. 1st. Because it is leading ; 2nd. it seeks the legal opinion of the witness ; 3rd. it does not tend to prove any issue formed.

The answer to the fifth interrogatory propounded to Lydia

Duffell v. Noble.

A. Bruce is objectionable. 1st. Because it is the legal opinion of the witness; 2nd. because it is not responsive to the interrogatory.

The sixth interrogatory propounded to Lydia A. Bruce was properly excluded. 1st. Because it was founded on the preceding illegal interrogatory, which had been excluded; 2nd. because it presumes a fact to have been proved which had not been done; in this, she had not said in answer to the fifth interrogatory, that the negro girl was given and delivered. The answer to the seventh interrogatory propounded to Lydia A. Bruce was properly excluded; because she does not answer the whole interrogatory. She answers the latter part, but does not answer the first part of the interrogatory. If she had answered the first part, she might have told things prejudicial to the appellants.

II. The object of proving the hiring of Mary in 1850, by Mr. Duffell, was this; the appellants allege as an excuse for not retaining possession of Missouri, that she was an infant; could not be separated from her mother. Now, if Missouri was an infant in 1838, she certainly was not one in 1851, therefore the cause assigned for not taking her in possession in 1838 had failed, was entirely removed in 1851; still, at that time we find appellants travelling from Rapides, Louisiana, (200 miles,) to Texas, to hire a negro girl from the deceased, who, according to their statements had in her possession a negro girl belonging to appellants, for which they would not have had to pay any hire. In this view, the evidence had a tendency to show that the gift never was made.

III. The charges asked are vague and uncertain as to the particular time appellants might have been in possession.

2nd. Possession of the negro by Mrs. Duffell, and admissions by L. Loving, are not conclusive of the gift. The admissions of donor are, to say the least, very unsatisfactory evidence of a gift, if not accompanied with an act. Possession obtained from the donor, unless with intent to pass the title, was not a

gift. The charges asked suppose it not material how the possession was obtained, whether with intent to pass title, peaceably, by design, or stratagem on the part of donee, so it was obtained, and the donor should say it was a gift, then the Court is asked to charge that it is one. The charge in the Court below, that if the donee was in possession at the time of the gift, then further delivery was unnecessary, is as favorable to the appellants as the charge asked.

The admissions of Mrs. Loving that she had given the negress to Mrs. Duffell, which, however, was too tender and delicate to be delivered, is not a constructive delivery, but is evidence that there was no delivery at all. If we allow the donor to be the judge of what will excuse an actual delivery, and still make the supposed gift legal, the benefits arising from the doctrine of delivery as now taught by our Courts, would be in a great part destroyed, as all and every kind of excuse for the non-delivery can be put in the mouth of the donor by fast witnesses, when the donor is dead and not able to contradict these concocted stories.

As to the instructions given and refused respecting delivery, I refer the Court to the case of Chevallier v. Wilson and wife, (1 Tex. R.) which I think fully sustains the charge of the Court.

The interrogatories and answers of Lydia A. Bruce were cumulative in every essential particular, and not independent. (Able v. Sparks, 6 Tex. R. 45.) A verdict for the appellant could not be sustained by the evidence.

The statement of facts presents a stronger case in favor of appellee, than was presented on the record in the case of Chevallier v. Wilson, (1 Tex. R.) Duffell, the son of appellants, whose evident leaning was in their favor, says, in speaking of Lydia Loving's admissions, that L. Loving said that when Mrs. Duffell came to Texas, the girl was hers, and she would make her a title to the negro; in fact, all of the witnesses (except Mrs. Meadow) who speak of L. Loving's admissions, qualify

them thus—the girl is Martha Duffell's at my death; I am going to carry her to Mrs. Duffell, &c.

WHEELER, J. We do not understand the Court, in its charge to have maintained, that, to constitute a valid gift, there must necessarily have been an actual, manual delivery of the property; but only that it must have been placed subject to such control and possession by the donee, as in its nature, it was susceptible of. This we understand to be the import of the charge upon that point; and so, we think, it must have been understood by the jury. In view of the whole evidence, we see no reason to apprehend that the jury were mislead by anything contained in the charge given; or to suppose the result would have been different, had the instructions, asked by the appellants, been given. Though the instructions asked may have been correct in point of law, the giving of them as asked, would have been calculated to give undue prominence to, and make the case turn upon, a few isolated facts; when in such a case, especially, it was proper, that the jury should be allowed to form their judgment upon a view of all the facts and circumstances of the case; and to judge of the real character of particular acts deposed to, by their consistency with the conclusion warranted by the whole evidence before them. After having given the law in charge to the jury, as applicable generally to the evidence, we think the Court might refuse to charge in reference to particular parts of the evidence in detail. We see no reason to apprehend that the jury were unapprised of the legal principles embraced in the instructions asked; or that they did not give to them sufficient consideration in making up their verdict.

The deposition of the witness, Bruce, in answer to the fifth interrogatory, was, perhaps, liable to criticism and objection, as being too broad and general in its statements; but the objection to the interrogatory seems rather critical than sound.

The deposition, however, was objectionable in the form and manner of deposing to the facts; and we are not prepared to say that there was error in excluding it. Had a new trial been awarded, we see no cause to suppose that it would have been attended with a different result; and upon the whole we are of opinion that the Court did not err in refusing a new trial, and that the judgment be affirmed.

Judgment affirmed.